## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANDRA ANN ROSS, | |
| Plaintiff | CIVIL ACTION NO. 1:14-CV-00990 |
| v. | (RAMBO, J.) |
| | (MEHALCHICK, M.J.) |
| CAROLYN W. COLVIN, | |
| Acting Commissioner of Social Security | |
| Defendant | |

## REPORT AND RECOMMENDATION

This is an action brought under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the Plaintiff's claim for a period of Disability Insurance Benefits under Title II of the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for the preparation of a report and recommended disposition pursuant to the provisions of 28 U.S.C. §636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated herein, it is recommended that the decision of the Commissioner be **AFFIRMED**.

### I.   BACKGROUND & PROCEDURAL HISTORY

On February 17, 2012, Plaintiff Sandra Ann Ross protectively filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act due to a heart attack and unstable blood pressure beginning March 21, 2011. (Admin Tr. 143; Doc. 9-6 p. 9). Ross's claim was denied initially on May 9, 2012, and denied on reconsideration on July 6, 2012. Ross requested, and was granted, an opportunity to have her claim re-evaluated during an administrative hearing. On October 16, 2013, Ross, assisted by counsel, appeared and

testified during an administrative hearing before Administrative Law Judge ("ALJ") B.T. Amos in St. Petersburg, Florida.

During her hearing, Ross testified that she lived with her husband in a house. (Admin Tr. 36; Doc. 9-2 p. 37). She also reported that she last worked as a registered nurse case manager in the insurance industry for approximately four months, until she had a heart attack in March 2011. *Id.* Prior to transitioning to the insurance industry, Ross worked as a case manager for a brain injury company for about one year, which she characterized as a similar type of work. (Admin Tr. 37; Doc. 9-2 p. 38). In a work history report, however, Ross reported that her work at the brain injury company required her to lift up to one hundred pounds, though she did not lift more than ten pounds on a frequent basis, whereas she only lifted objects weighing less than ten pounds as a nurse practitioner case manager. (Admin Tr. 153-54; Doc. 9-6 pp. 19-20).

Ross reported that she cannot return to work because she cannot focus, stay on task, or concentrate, and because she experiences chronic fatigue therefore must take mid-day naps. (Admin Tr. 38; Doc. 9-2 p. 39). Additionally, Ross asserted that she has anxiety (related to her heart condition), heart palpitations (due to her anxiety), shortness of breath on exertion, dizziness, neuropathy in her hands (right more often than left). *Id.*  She also experiences "occasional" chest pain and "more than occasional" swelling in her feet. She reported that when her feet swell she must sit down and elevate her feet above her heart level. *Id.* Ross reported that she has difficulty using her right (dominant) had due to neuropathy, and constantly drops items. (Admin Tr. 38-39; Doc. 9-2 pp. 39-40). In a cardiac questionnaire, Ross reported that she could walk one to two blocks before stopping due to shortness of breath, climb

12 steps before she develops a rapid heartbeat, is unable to lift more than fifteen pounds, and cannot lift objects of any weight above her head. (Admin Tr. 137-38; Doc. 9-6 pp. 3-4). As far as her daily activities, Ross testified that she can do all "basic daily living" activities like cooking, cleaning, and laundry. (Admin Tr. 166-67; Doc. 9-6 pp. 32-33).

On December 3, 2013, the ALJ denied Ross's claim in a written decision. (Admin Tr. 20-28; Doc. 9-2 pp. 21-29). Thereafter, Ross requested review of her claim by the Appeals Council. On March 27, 2014, her request for review was denied. (Admin Tr. 1-3; Doc. 9-2 pp. 2-4).

At some point between the Appeals Counsel's decision to deny review, and her initiation of this action, Ross – formerly a Florida resident – relocated to the Middle District of Pennsylvania. She currently resides within the Middle District of Pennsylvania. She then initiated this action by filing a Complaint in this Court on May 22, 2014.[1] (Doc. 1). Ross alleges that the conclusions and findings of fact made by the Commissioner are not supported by substantial evidence, are contrary to the law and applicable regulations, and urges us to reverse the Commissioner's decision without remand, or in the alternative remand this matter for a new administrative hearing. On July 25, 2014, the Commissioner filed her Answer to Ross's complaint, in which she contends that the decision denying Ross's application for disability insurance benefits is correct and in accordance with the law and applicable regulations. (Doc.

---

[1] 42 U.S.C. §405(g) provides, in pertinent part, that an action seeking judicial review of the Commissioner's final decision denying benefits "shall be brought in the district court of the United States for the judicial district in which the plaintiff resides …"

8). Together with her answer, the Commissioner filed a complete copy of the administrative record. (Doc. 9).

Having been fully briefed by the parties, this appeal is now ripe for resolution. (Doc. 10; Doc. 16).

## II.   STANDARD OF REVIEW

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators – the ALJ and this Court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits.

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §405(g); *see also* 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §405(g); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this framework, the ALJ must

4

sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520. Between steps three and four, the ALJ must also assess a claimant's Residual Functional Capacity ("RFC"). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. §404.1545. In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. §423(d)(5); 20 C.F.R. §404.1512; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); *Mason*, 994 F.2d at 1064.

Once a final decision is issued by the Commissioner, and that decision is appealed to this Court, this Court's review of the Commissioner's final decision is limited to determining whether the findings of the final decision maker – the ALJ in this case – are supported by

substantial evidence in the record. *See* 42 U.S.C. § 405(g)(sentence five); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200(3d Cir. 2008); *Ficca v. Astrue*, 901 F.Supp.2d 533, 536(M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason*, 994 F.2d at 1064. But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether Ross is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); *Burton v. Schweiker*, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d

Cir. 1990)(noting that the scope of review on legal matters is plenary); *Ficca*, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

## III.   THE ALJ'S DECISION

In his decision, the ALJ found that Ross meets the insured status requirements of Title II of the Social Security Act through December 31, 2016, and proceeded through steps one though four of the five step sequential evaluation process. At step one, the ALJ found that Ross has not engaged in any substantial gainful activity since March 21, 2011, her alleged onset date. (Admin Tr. 21; Doc. 9-2 p. 22). At step two, the ALJ found that Ross had the medically determinable severe impairments of coronary artery disease with a history of percutaneous coronary intervention and stent, hypertension, hyperintensive cardiovascular disease, hyperlipidemia, obesity, and chronic stable angina. *Id.* The ALJ found that Ross's alleged impairments of anxiety and neuropathy were not medically determinable due to a lack of objective evidence. *Id.* At step three, the ALJ found that Ross did not have an impairment, or combination of medically determinable impairments, that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin Tr. 23; Doc. 9-2 p. 24).

Before proceeding to step four, the ALJ evaluated Ross's residual functional capacity based upon his review of all the relevant evidence in the record, which included treatment notes, hospital records, Ross's statements, and medical opinions by treating medical sources cardiologist Dr. Vimesh Mithani and primary care physician Dr. Halima Ghafoor, and an RFC assessment by non-examining cardiopulmonary specialist Robert Whittier.

On July 5, 2012, Dr. Whittier assessed Ross's physical limitations based on Ross's medical records, and without conducting an in-person examination. (Admin Tr.61-63; Doc. 9-3 pp. 16-18). Dr. Whittier opined that the medical evidence of record was sufficient to establish the existence of congestive heart failure ("CHF") and Ischemic Heart Disease. Dr. Whittier opined that, based on the medical evidence of record and relatively benign May 2012 echocardiogram Ross could: occasionally lift or carry twenty pounds and frequently lift or carry ten pounds; stand or walk up to six hours per eight-hour workday; sit up to six hours per eight-hour workday; frequently stoop, kneel, crouch, and crawl; and, occasionally climb ramps, stairs, ladders, ropes, scaffolds, and balance. Dr. Whittier opined that Ross had no manipulative, visual, communicative, or environmental limitations.

On September 12, 2012, Ross's primary care physician, Dr. Halima Ghafoor completed a residual functional capacity questionnaire in which she assessed Ross's physical limitations. (Admin Tr. 257-58; Doc. 9-7 pp. 43-44). Dr. Ghafoor diagnosed Ross with coronary artery disease, and reported that Ross suffered from chest pain, got light-headed, and experienced dizziness and fatigue due to this impairment. She also noted that Ross's prognosis was "guarded." Dr. Ghafoor assessed that Ross could: sit up to forty-five minutes at one time, and a total of six hours per eight-hour workday; stand or walk up to fifteen minutes at one time, and a total of one hour per eight-hour workday; occasionally lift or carry less than ten pounds; and never perform tasks requiring fine manipulation with her right hand or reach over her head with her right arm. Dr. Ghafoor also opined that Ross would need to recline or lie down during a typical eight-hour workday for periods in excess of the typical break-time allowed and may require an unscheduled break every hour for ten to fifteen minutes.

On January 4, 2013, treating cardiologist Vimesh Mithani completed a residual functional capacity questionnaire in which he assessed Ross's physical limitations. (Admin Tr. 278-79; Doc. 9-7 pp. 64-65). Dr. Mithani, who had examined Plaintiff three to four times per year since March 2011, diagnosed Ross with coronary artery disease, and reported that she experienced the symptom of angina and medication side effects of dizziness and fatigue due to this impairment. He also reported that Ross's prognosis was "good," and that her symptoms would "seldom" be severe enough to interfere with the attention and concentration required to perform simple work-related tasks. *Id.* Dr. Mithani opined that Ross could: sit for up to one hour at a time, and a total of six hours per eight-hour workday; stand or walk up to thirty minutes at one time, and for a total of one hour per eight-hour workday; occasionally lift or carry less than ten pounds. Additionally, Dr. Mithani noted that Ross would "seldom" need a ten to fifteen minute unscheduled work break, did not have an reaching or fingering limitations, and would be physically capable of working an eight-hour day, five days per week on a sustained basis except that she would be absent from work once or twice per month as a result of her impairments or health treatment. *Id.*

Based on the record as a whole, the ALJ found that, during the relevant period, Ross had the RFC to perform the full range of light work, as defined in 20 C.F.R. §404.1567(b). (Admin Tr. 23-27; Doc. 9-2 pp. 24-28).

In a work history report dated March 2012, Ross reported that her duties as a RN-Case manager in the insurance industry were sedentary in nature; she was seated eight hours per day, and was not required to lift objects weighing more than ten pounds. (Admin Tr. 152-161; Doc. 9-6 pp. 18-27). She worked as a case manager in the insurance industry from November 2010

until March 2011, and reported that she could no longer perform that position because the mental stress of the job brings on chest pain; she also believes that work stress from this position contributed to her heart attack. *Id.* Ross also reported that she held positions as a case manager in the medical industry, and worked at hospitals, a brain injured house, and in home care management between January 1998 and November 2010. In all but one of these positions Ross reported that her duties included carrying medical equipment and lifting patients – thus requiring her to occasionally lift up to 100 pounds. *Id.* While working in home care management from April 2001 to October 2002, however, Ross reported that her duties did not require her to lift more than twenty pounds occasionally and ten pounds frequently. *Id.* She also reported that this position required extensive travel, but that she spent up to ten hours of each twelve-hour workday sitting. At step four, the ALJ concluded that Ross could perform her past relevant work as a case manager, as actually performed, because:

> the claimant's work in each of these jobs lasted for years starting around 2001 to 2002 and from 2007 to 2011. As such the record confirms she held the job for a duration long enough to have learned the occupation. Further the claimant's earnings records shows periods of work performed at substantial gainful activity levels. (Admin Tr. 27; Doc. 9-2 p. 28).

Thus, because he found that she was capable of performing her past relevant work as a case manager, the ALJ found that Ross was not under a disability as it is defined by the Social Security Act. [2]

---

[2] The Court notes that no Vocational Expert was called to testify in this case. Further, Ross does not raise the issue of whether the ALJ accurately classified Ross's past relevant work.

*(footnote continued on next page)*

IV.   ANALYSIS

Ross contends that the ALJ's decision is not supported by substantial evidence because his conclusions were premised upon an incomplete RFC assessment. Her argument is twofold. First, she asserts that the ALJ erred by "dialing to afford controlling weight to the opinions of Halima Ghafoor, M.D., and Vimesh Mithani, M.D., despite their treating relationships with Ross, their mutually consistent opinions, and the support from their treatment notes." (Doc. 10 p. 4). Second, Ross asserts that the ALJ erred in his assessment of the credibility of Ross's testimony because he failed to fully analyze the aggravating factors of Ross's symptoms or the type of medications she was prescribed. *Id.* at 8. In response, the Commissioner contends that the ALJ applied the correct legal principles when weighing the medical opinion evidence, and properly determined that Ross's subjective complaints were only partially credible. (Doc. 16 pp. 10, 19).

A.   ASSESSMENT OF THE MEDICAL OPINION EVIDENCE

1.   **Weight of the Medical Opinion Evidence**

The Social Security Regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including … symptoms, diagnosis and prognosis, what [the claimant] can still do despite [his or her] impairment(s), and … physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). The Social Security Regulations define "acceptable medical sources" as

---

Instead, she alleges that she is unable to meet the exertional demands of her past work as it was characterized by the ALJ.

licensed physicians, licensed or certified psychologists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R §404.1513.

It is clearly within the ALJ's authority to choose whom to credit when the record contains conflicting medical opinions. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). However, since it is apparent that the ALJ "cannot reject evidence for no reason or the wrong reason," *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)(*citing Mason*, 994 F.2d at 1066), the ALJ is also required to provide an explanation as to why opinion evidence by acceptable medical sources has been rejected so that a reviewing court can determine whether the reasons for rejection were proper. *Cotter v. Harris*, 642 F.2d 700, 704, 707 (3d Cir. 1981).

The Social Security Rulings and Regulations provide a framework under which medical opinion evidence must be considered. At the outset, the Court notes that the Social Security Regulations discuss the nature of an acceptable medical source's treatment relationship with the claimant in terms of three broad categories: treating; examining; and non-examining.[3] The Social Security Regulations also express a clear preference for opinions by treating sources. *See Morales*, 225 F.3d at 317 ("a cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert

---

[3] A treating source is defined as an acceptable medical source who provides or has provided a claimant with medical treatment or evaluation, and who has or had an ingoing treatment relationship with the claimant. 20 C.F.R. §404.1502. A non-treating source is defined as an acceptable medical source that has examined the claimant but did not have an ongoing treatment relationship – like a consultative examiner. *Id.* A non-examining source is defined as an acceptable medical source that has not examined the claimant, but has provided an opinion in the case – like a state agency reviewing doctor. *Id.*

judgment based on a continuing observation over a prolonged period of time."). Pursuant to 20 C.F.R. §404.1527(c)(2):

> if [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight.

*see also* SSR 96-2p, 1996 WL 374188. Furthermore, finding that the medical opinion of a treating source is not entitled to controlling weight does not mean the opinion should be rejected. SSR 96-2p, 1996 WL 374188, at *1. In many cases, a treating source's medical opinion will be entitled to great deference even where it is found to be non-controlling. *Id.*

Where the ALJ finds that no treating source opinion is entitled to controlling weight, the regulations provide that the weight of all non-controlling opinions by treating, examining, and non-examining medical sources should be evaluated based on the following factors: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §404.1527(c). In addition, the ALJ should consider any other factors that tend to support or contradict the opinion that were brought to his or her attention. 20 C.F.R. §404.1527(c)(6).

Ross asserts that "based on the extensive treating relationships between Ross and both Dr. Ghafoor and Mithani, the mutual consistency of their opinions, and the support from their treatment notes, the ALJ should have afforded controlling weight to both opinions." In his decision, the ALJ accorded "little" weight to the RFC questionnaire completed by Dr. Ghafoor because:

> It lacks any explanation, support, or reference to objective medical evidence. Dr. Ghafoor finds the claimant with frequent concentration problems severe enough to limit the claimant's ability to tolerate simple work. She also finds the claimant with a need to lie down during the workday, the inability to walk, the inability to sit, stand, or walk for more than 15-45 minutes, and the inability to perform fine manipulation with her right hand. These are significant limitations which are not supported by the above treatment notes. In fact, the above notes suggest that the claimant is "generally healthy." Indeed, the claimant's testimony did not even suggest this level of limitation and instead focused on anxiety, fatigue, and capacity. Considering the inconsistency and disconnect from Dr. Ghafoor's medical source statement and the above medical record, the undersigned provides Dr. Ghafoor's opinion little weight.

(Admin Tr. 26; Doc. 9-2 p. 27). The Court has reviewed Dr. Ghafoor's examination notes, (Admin Tr. 229-56, 311-24; Doc. 9-7 p. 15-42; Doc. 9-8 pp. 2-15), and agrees with the ALJ's assessment that the notes do not support the extreme limitations advocated by Dr. Ghafoor in her RFC questionnaire. These records reflect that Ross presented for follow-up treatment and medication management after her March 2011 heart attack without any significant complaints. Ross made only sporadic reports of bilateral hand numbness, (Admin Tr. 234-35; Doc. 9-7 pp. 20-21), back pain, (Admin Tr. 233; Doc. 9-7 p. 19), insomnia, (Admin Tr. 242; Doc. 9-7 p. 28), and headache. (Admin Tr. 239; Doc. 9-7 p. 25). Neither Dr. Ghafoor's notes, nor any other evidence in the record, including Ross's own testimony, support the degree of functional limitation described by Dr. Ghafoor. Moreover, as noted by the ALJ, Ross's most recent treatment notes reflect that she was "generally healthy," and "doing well," and that, for the most part, she denied chest pain, palpitations, shortness of breath, headaches, muscle weakness, back pain, joint pain, limitation in range of motion, and dizziness. (Admin Tr. 311-13, 320-23; Doc. 9-8 pp. 2-4, 11-14).

Similarly, the ALJ accorded "some" weight to the RFC questionnaire completed by Dr. Mithani, because,

14

> Dr. Mithani admits the claimant's impairments are seldom severe enough to limit simple work-related tasks. He also notes the claimant's history of fatigue and dizziness, but admits these symptoms are not currently present. Despite these findings, which are consistent with the above treatment record, he goes on to assess a need for unscheduled breaks during the work day so the claimant can lie down, finds the claimant unable to stand/walk for more than an hour during the workday, and finds the claimant unable to lift 10 pounds. There is little evidence to support such extreme limitations; indeed the claimant denied muscle weakness, back pain, neurological symptoms, and fatigue during routine treatments for heart disease. As such, the undersigned cannot provide more than some weight to Dr. Mithani's opinion.

(Admin Tr. 27; Doc. 9-2 p. 28). The Court has reviewed Dr. Mithani's examination records, (Admin Tr. 259-73, 328-31; Doc. 9-7 pp. 45-59; Doc. 9-8 pp. 19-22), and agrees with the ALJ's assessment that there is little evidence to support his opinion that Ross would: require unscheduled breaks to lie down during the workday; be unable to stand or walk for more than one hour during an eight-hour workday; and, be unable to lift more than ten pounds occasionally. As discussed above, Ross's most recent treatment records reflect that she continually denied any back or musculoskeletal pain, muscle weakness, and fatigue during her more recent medical appointments.

Accordingly, the Court finds that the ALJ's assessment of the medical source statements by Doctors Ghafoor and Mithani is well-explained, in accordance with the applicable regulations, and is supported by substantial evidence in the record.

### 2. Obligation to Re-contact Treating Medical Sources

Citing SSR 96-5p, Ross also contends that anytime a treating physician's evidence does not support his or her opinion, the ALJ must make a reasonable effort to re-contact the physician in order to clarify the basis for the opinion. Ross asserts that "[t]he ALJ's failure here is striking as these opinions may have been entitled to great, if not controlling weight given the

extensive treatment provided by both doctors." (Doc. 10 p. 8). In response, the Commissioner, relying on 20 C.F.R. §404.1520b, asserts that Ross's argument lacks merit because an ALJ's decision to recontact a treating source is discretionary rather than mandatory. (Doc. 16 p. 14-15). For the reasons stated herein, the Court finds that the ALJ's obligation to recontact Ross's treating sources was not triggered under either SSR 96-5p or 20 C.F.R. §404.1520b.

At the outset, the Court notes that SSR 96-5p applies only to the evaluation of medical source opinions on issues reserved to the Commissioner. 1996 WL 374183. Thus, the only portions of either opinion that would fall under the purview of this administrative ruling are, Dr. Ghafoor's statement that Ross *is not* physically capable of working an eight hour day five days a week on a sustained basis, and Dr. Mithani's subsequent statement that Ross *is* physically capable of working an eight-hour day five days per week on a sustained basis. *See* 20 C.F.R. §404.1527(d); SSR 96-5p, 1996 WL 374183, at *3-6. Second, the Court notes that, contrary to Ross's assertions, opinions by medical sources on issues reserved to the Commissioner are never entitled to *controlling* weight. 20 C.F.R. 404.1527(d)(3); SSR 96-5p, 1996 WL 374183, at *6.

With respect to an ALJ's obligation to re-contact treating sources, SSR 96-5p provides that:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort to recontact the source for clarification of the reasons for the opinion."

1996 WL 374183, at *6.[4] The above-quoted passage, however, reflects that SSR 96-5p requires

re-contact only when both: (1) the record fails to support a treating source's opinion; and (2) the

basis of the treating source's opinion is unascertainable from the record. Although the ALJ did

not directly address either physician's assessment of whether Ross could work eight hours per

day five days per week on a sustained basis, he generally afforded "little" weight to Dr.

Ghafoor's opinion because it was not supported by the medical evidence of record or Plaintiff's

---

[4] The Court notes that the mandatory language in SSR 96-5p mirrors language that was codified a prior version of the recontact provision of Social Security regulation 20 C.F.R. §404.1512(e) (effective Jun. 13, 2011 to Mar. 25, 2012), which provides that the Administration "will first recontact" the claimant's treating physician to "seek additional evidence or clarification from [a claimant's] medical source when the report from [the claimant's] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *See also* 20 C.F.R. §404.1527(c)(3) (effective Jun. 13, 2011 to Mar. 25, 2012)("we will try to obtain additional evidence under the provisions of §§ 404.1512 …"). In March 2012, however, the recontact provisions in 20 C.F.R. §§404.1512 and 404.1527 were deleted, and a modified recontact provision using permissive, rather than mandatory, language was codified in 20 C.F.R. §404.1520b. The newer regulation allows for greater flexibility in the resolution of inconsistency and insufficiency in the record that prevents the adjudicator from reaching a decision on the issue of whether a claimant is disabled. In addition, unlike the prior regulations, 20 C.F.R. §404.1520b does not include the requirement that the adjudicator must "first" recontact a treating medical source where and evidentiary inconsistency or insufficiency prevents the adjudicator from making a disability determination, and instead allows the ALJ to take one of several actions (including the option to recontact a treating source) to resolve an evidentiary insufficiency. In so doing, the Administration clarified that adjudicators are expected to continue to recontact medical sources in such cases when it is the most effective and efficient way to resolve an inconsistency or insufficiency, and provided the following examples where recontact would be the most efficient solution: (1) where a report from a medical source contains a functional assessment but no clinical or objective findings in support of it; or, (2) where evidence from a medical source contains an inconsistency about an issue relevant to the disability determination. *See* How We Collect and Consider Evidence of Disability, 76 Fed.Reg. 2082-01 (notice of proposed rulemaking Apr. 12, 2011); How We Collect and Consider Evidence of Disability, 77 Fed.Reg. 10651-01 (final rule Feb. 23, 2012).

own testimony, and afforded "some" weight to Dr. Mithani's opinion because portions of it were consistent with the medical evidence despite the fact that some limitations were not supported. The Court finds, and the parties do not appear to dispute, that this rationale extends to the doctors' assessments of whether Ross could work on a sustained basis. Further, the Court finds that only Dr. Ghafoor's opinion satisfies the first condition of SSR 96-5p because the ALJ found, by implication, that the record did not support Dr. Ghafoor's assessment that Ross could not work eight hours per day five days per week on a sustained basis.[5] The second condition, however, has not been met. The ALJ does not express confusion regarding the basis of Dr. Ghafoor's opinion. Instead the ALJ concludes that the purported basis for Dr. Ghafoor's opinion – her treatment records – does not lend any support to her opinion. And in fact, as discussed above, the ALJ's conclusion in this regard is supported by substantial evidence. Thus, the ALJ had no obligation to recontact either physician under SSR 96-5p.

Moreover, to the extent that Ross attempts to assert that the ALJ had an obligation to recontact both doctors under 20 C.F.R. §404.1520b, the Court disagrees. As noted by the Commissioner, if any of the evidence, including medical opinions, is inconsistent, the adjudicator will weigh the relevant evidence and see whether he or she can determine whether the claimant is disabled based on the evidence in the record. 20 C.F.R. §404.1520b(b). Thus, inconsistency alone is insufficient to trigger the ALJ's obligation to take the action under 20

---

[5] With respect to Dr. Mithani's opinion the first condition of SSR 96-5p has not been met because the ALJ implicitly *credits* Dr. Mithani's assessment that Ross could work eight hours per day five days per week on a sustained basis.

C.F.R. §404.1520b(c). Rather, an ALJ is obligated to take action to resolve an evidentiary inconsistency only if, after weighing the evidence, the ALJ cannot reach a conclusion as to whether the claimant is disabled. 20 C.F.R. §404.1520b(c). Although Ross has alleged that the ALJ should have recontacted doctors Ghafoor and Mithani to resolve the inconsistencies between their treatment notes and medical opinions, she has failed to show that there was insufficient evidence in the record to allow the ALJ to reach an informed decision on the issue of disability. Furthermore, this Court's own review of the evidentiary record confirms the record contains sufficient evidence to allow the ALJ to make an informed decision. Specifically, the ALJ cited to Ross's medical treatment records, the credible portions of Ross's testimony, and the assessment of a non-examining state agency medical consultant to the extent that it is consistent with Ross's subsequently produced medical records to support his RFC assessment. Accordingly, the ALJ was not obligated to further develop the record in this case by recontacting Ross's treating doctors, or taking any other action to develop the record under 20 C.F.R. §404.1520b(c).

### B. Assessment of the Credibility of Plaintiff's Testimony

An ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness' demeanor and credibility. *Frazier v. Apfel*, No. 99-CV-715, 2000 WL 288246, at *9(E.D. Pa. Mar. 7, 2000)(*quoting Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531(6th Cir. 1997)). Furthermore, in making a finding about the credibility of a claimant's statements, the ALJ need not totally accept or totally reject the individual's statements. SSR 96-7p, 1996 WL 374186. The ALJ may find all, some, or none of the claimant's allegations to be credible, or may find a claimant's

statements about the extent of his or her functional limitations to be credible but not to the degree alleged. *Id.*

The Social Security Rulings and Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. §404.1529; SSR 96-7p, 1996 WL 374186. First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §404.1529(b); SSR 96-7p, 1996 WL 374186. During the second step of his or her credibility assessment, the adjudicator must determine whether the claimant's statements about the intensity, persistence or functionally limiting effects of his or her symptoms are substantiated based on the adjudicator's evaluation of the entire case record. 20 C.F.R. §404.1529(c); SSR 96-7p, 1996 WL 374186. This includes, but is not limited to: medical signs and laboratory findings, diagnosis and other medical opinions provided by treating or examining sources, and "other medical sources"; and, information concerning the claimant's symptoms and how they affect his or her ability to work. *Id.* The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 96-7p, 1996 WL 374186. Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. §404.1529(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's

symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. *Id.*

Ross alleges that the ALJ failed to fully analyze the aggravating factors of Ross's symptoms and medications in accordance with 20 C.F.R. §404.1529(c)(3)(iii) and (iv) and SSR 96-7p. Specifically, she asserts that the ALJ failed to discuss: statements in a June 2012 chest pain questionnaire that anxiety and increased physical activity, both jointly and separately, caused her to experience chest pain; and her medication regimen. (Doc. 10 p. 8-9). In response, the Commissioner contends that the ALJ properly assessed Ross's testimony in accordance with 20 C.F.R. §404.1529 and SSR 96-7p, and that the ALJ's assessment is supported by substantial evidence. (Doc. 16 pp. 16-19). In his decision, the ALJ found that Ross's statements concerning the intensity, persistence, and limiting effects of her symptoms – including her chest pain and allegations of severe medication side effects– were not entirely credible to the extent they were inconsistent with a longitudinal review of her treatment records. (Admin Tr. 24; Doc. 9-2 p. 25).

After reviewing the record as it relates to the ALJ's assessment of the credibility of Ross's statements, the Court concludes that the ALJ's credibility determination is complete, adequately explained, and is supported by substantial evidence. The ALJ specifically cited to Ross's June 2012 chest pain questionnaire and provided a detailed summary of Ross's treatment history which highlights the inconsistency between the frequency that Ross testified

she experienced chest pain (several times per week), and her infrequent complaints of chest pain to her medical sources. The record reveals that Ross presented at the emergency room with chest pain on her alleged onset date, reported "occasional" atypical chest pain in April 2011, (Admin Tr. 259; Doc. 9-7 p. 45), and reported one episode of chest discomfort in December 2012, (Admin Tr. 269; Doc. 9-7 p. 55), but expressly denied experiencing chest pain during examinations in May 2011, September 2011, September 2012, January 2013, and April 2013, (Admin Tr. 245, 246, 248, 311, 328; Doc. 9-7 pp. 31, 32, 34; Doc. 9-8 pp. 2, 19). Further, in April 2013, it was noted that Ross's angina was "stable," (Admin Tr. 329; Doc. 9-8 p. 20), and her treating cardiologist Dr. Mithani, whose opinion the ALJ generally accorded "some" weight, opined that Ross's angina would "seldom" interfere with her ability to concentrate at work. (Admin Tr. 278; Doc. 9-7 p. 64). With respect to Ross's contention that the ALJ dismissed her allegations that her chest pain was also caused by her anxiety, the Court finds that the ALJ accurately noted that there is no record of prescription treatment for anxiety, and that Ross's treatment notes do not contain any recommendation that she avoid stressful situations that might trigger her anxiety. (Admin Tr. 25; Doc. 9-2 p. 26).

Further, though the ALJ did not engage in any protracted discussion of Ross's medications, he provided sufficient explanation to allow this Court to ascertain the basis for his conclusion. The ALJ discussed Ross's medication regimen in several passages of his decision noting that Ross reported "treating with multiple medications which cause side effects like fatigue, feeling lightheaded, and dizziness," but that Ross's treatment history makes "no mention of limitation from medication side effects." (Admin Tr. 25; Doc. 9-2 p. 26). In fact, there is only one instance where any significant adverse side effect was mentioned in Ross's

treatment history. On September 10, 2012, due to an elevated liver function test ("lft"), Dr. Ghafoor noted that Ross could not tolerate statins and prescribed a different blood pressure medication (Niaspan). (Admin Tr. 313; Doc. 9-8 p. 4). A lab report from October 2012 showed that Ross's liver function improved after she was taken off statins, (Admin Tr. 317; Doc. 9-8 p. 8), and January 2013 treatment notes reflect that Ross's labs were normal. (Admin Tr. 311; Doc. 9-8 p. 2). Further, nothing in the record suggests that this new medication was less effective. Thus, the Court finds that the ALJ's discussion of Ross's medication side effects was sufficient in light of the lack of support for her allegations in the longitudinal treatment records.

Accordingly, the Court finds that the ALJ accurately and completely discussed Ross's alleged symptoms, and that his decision to discount Ross's statements about the intensity, persistence, and limiting effects of Ross's impairments to the extent her testimony was inconsistent with the medical evidence of record is supported by substantial evidence.

## V. RECOMMENDATION

Based on the foregoing, the Court concludes that the final decision of the Commissioner denying Sandra Ann Ross' Title II application for Disability Insurance Benefits is supported by substantial evidence, and recommends that the Commissioner's decision be **AFFIRMED**.

**Dated: March 10, 2015**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

SANDRA ANN ROSS,

<div style="margin-left:2em">Plaintiff</div>

CIVIL ACTION NO. 1:14-CV-00990

v.

(RAMBO, J.)
(MEHALCHICK, M.J.)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security

<div style="margin-left:2em">Defendant</div>

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **March 10, 2015**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**